# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

CHRISTOPHER PAUL MARION,

    Plaintiff,

v.                                                                                      Case No. 5:23-cv-201-JA-PRL

JOSHUA PENNEY and SHERIFF
OF CITRUS COUNTY,

    Defendants.

_____

## ORDER

This case is before the Court on Defendant Joshua Penney's Motion for Summary Judgment, (*see* Docs. 18 & 19), Plaintiff's response (Doc. 20), and Defendant's reply (Doc. 21). Having considered the parties' submissions, the Court finds that the Motion must be granted.

### I.   FACTS[1]

Plaintiff Christopher Marion is 61 years old, and his friend Michael Wilson is 71. (Marion Dep., Doc. 20-1, at 12; Wilson Dep., Doc. 20-2, at 12). They are military veterans living in Crystal River, Florida. (Doc. 20-1 at 12; Doc. 20-2 at 12). The evening of January 13, 2022, started off well for the friends. They

---

[1] In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

went to dinner together and visited until about 11:00 p.m. (Doc. 20-1 at 18; Penney Aff., Doc. 19-1, at 6). After dinner, Plaintiff drove Wilson home. (Doc. 20-1 at 58). Wilson's house is behind Sara's Diner and his property abuts the diner's parking lot. (Doc. 20-1 at 18). Wilson kept an Airstream trailer on his property and was temporarily residing in the trailer while painting the inside of his house. (Doc. 20-1 at 25). As they approached Wilson's house, Wilson instructed Plaintiff to "pull around back" and park in the diner parking lot near the trailer. (Doc. 20-1 at 25). The diner had closed at 2:00 p.m., and except for Marion's car, the parking lot was empty. (Doc. 19-1 at 6).

After Plaintiff parked his car, the two friends remained in the car with the headlights on, talking for at least ten minutes. (Doc. 20-1 at 23, 27). The headlights illuminated a shed maintained by the diner. (Doc. 20-1 at 27). The course of the evening then took a bad turn. While in the car, the friends noticed a sheriff's patrol car with its bright lights on pull up behind them. (Doc. 20-1 at 30). Deputy Joshua Penney stepped out and approached the driver's window of Plaintiff's car. (Doc. 20-1 at 33). Plaintiff asked, "What can I do for you, Sir?" (*Id.*). The Deputy responded by asking for Plaintiff's identification. (Doc. 20-1 at 34). Instead of providing his driver's license, Plaintiff asked, "For what reason?" (*Id.*). The Deputy did not respond but instead tried to open Plaintiff's door. (Doc. 20-1 at 34–36). When his efforts to open the door failed, the deputy told Plaintiff to get out of his car. (*Id.*). As Plaintiff opened the car door, he gave the Deputy

2

his name. (Doc. 20-1 at 36). Upon Plaintiff's exit from the car, the Deputy handcuffed him and asked him what he was doing in the parking lot. (Doc. 20-1 at 36). Plaintiff responded, "I'm dropping my friend off at his house directly in front of us." (Doc. 20-1 at 37). While still handcuffed, Plaintiff told the Deputy that his identification card was in his jacket pocket. (Doc. 20-1 at 38). The Deputy then searched Plaintiff and removed his cell phone, wallet, and keys and placed them on the roof of Plaintiff's car. (*Id.*). He then directed Plaintiff to stand behind Plaintiff's car. (*Id.*). Leaving Plaintiff standing, the Deputy approached Wilson. (Doc. 20-1 at 38). Wilson asked the Deputy for permission to enter his home to use the toilet, stating that he would come back. (Doc. 20-2 at 37). The Deputy agreed. (*Id.*). When Wilson returned minutes later, he could not see Plaintiff and assumed that he was in the Deputy's patrol car. (Doc. 20-2 at 39). The Deputy told Wilson that he was free to go. (Doc. 20-2 at 39).

After releasing Wilson, the Deputy returned to Plaintiff and asked him why he was in the parking lot. (Doc. 20-1 at 40). Plaintiff repeated that he was merely dropping Wilson off at his house. (Doc. 20-1 at 41). Approximately thirty minutes after the Deputy first approached Plaintiff, the Deputy told him that he was under arrest for "loitering, prowling, and resisting without violence." (Doc. 20-1 at 88). Early the next morning, a state judge determined that probable cause existed to hold Plaintiff for loitering and prowling. (First Appearance Findings and Orders, Doc. 19-4).

Plaintiff remained in the county jail for sixteen hours before Wilson paid his bail. (Doc. 20-1 at 51, 58). The state prosecutor later dropped both charges.[2] (Doc. 20-1 at 80).

## II. PROCEDURAL HISTORY

In March 2023, Plaintiff filed this suit alleging three counts: (1) false arrest in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against the Deputy; (2) false imprisonment against the Sheriff of Citrus County; and (3) battery against the Sheriff of Citrus County. (*See* Docs. 1, 11, & 12). After discovery was completed, Defendants moved for summary judgment. (Doc. 18). Plaintiff has since settled with the Sheriff. (*See* Docs. 28–30 & 38). Accordingly, Count I against the Deputy is the only count remaining for resolution by the Court.

## III. SUMMARY JUDGMENT STANDARDS

Summary judgment shall be granted if the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally, in deciding a motion for summary judgment, the Court "view[s] the facts and

---

[2] Plaintiff was charged with (1) loitering and prowling, § 856.021, Fla. Stat., and (2) resisting officer without violence to his or her person, § 843.02, Fla. Stat. (*See* Doc. 19-4).

draw[s] all reasonable inferences in favor of [the nonmoving party]." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013).

The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the [C]ourt—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When presented with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). The Court's role at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "In essence, . . . the inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## IV. DISCUSSION

In his summary judgment motion, the Deputy relies in part on the doctrine of qualified immunity. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If a government official proves that they were acting within the scope of their discretionary authority, the burden shifts to the plaintiff to show both that (1) the official violated a constitutional right and (2) the right was clearly established at the time of the misconduct. *Jacoby v. Baldwin County*, 835 F.3d 1338, 1344 (11th Cir. 2016).

Here, the parties do not appear to dispute that the Deputy was acting within his discretionary authority for purposes of qualified immunity. (*See* Docs. 18, 20, & 21). So, Plaintiff must show a violation of a clearly established constitutional right. Plaintiff claims that the Deputy arrested him without probable cause, in violation of his constitutional rights under the Fourth and Fourteenth Amendments. (*See* Doc. 20 at 18–19). *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023).

"To receive qualified immunity [in a false arrest case], an officer need not have probable cause, but only 'arguable' probable cause." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff.'" *Id.* (quoting *Kingsland v. City of Miami*, 382 F. 3d 1220, 1232 (11th Cir. 2004)). To determine whether the Deputy had arguable probable cause for the arrest, the Court must look at the totality of the circumstances,

6

including what the Deputy knew at the time of the arrest. *Garcia*, 75 F.4th at 1187–88.

Looking at the totality of the circumstances, the Deputy had arguable probable cause to arrest Plaintiff for loitering and prowling. The Florida loitering and prowling statute makes it "unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." § 856.021, Fla. Stat. Here, it was late at night, (Doc. 19-1 at 6); the car had been idling for at least ten minutes, (Doc. 20-1 at 23); the car was parked in the parking lot of a diner that had been closed for nine hours, (Doc. 19-1 at 6); and the car's headlights illuminated the shed in front of them, (Doc. 20-1 at 27). Because it was not obvious that the Deputy's arrest of Plaintiff for loitering and prowling in these specific circumstances would violate the Fourth Amendment, the Deputy is entitled to qualified immunity on Plaintiff's false arrest claim. *See Garcia*, 75 F.4th at 1187.

## V. CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Deputy Penney's Motion for Summary Judgment (Doc. 18) is **GRANTED**.

2. The Clerk is directed to enter a judgment providing that Plaintiff takes nothing on his claim against Defendant Joshua Penney in this case. Thereafter, the Clerk shall close this case.

**DONE** and **ORDERED** on April 8, 2024.

                                  JOHN ANTOON II
                                  United States District Judge

Copies furnished to:
Counsel of Record